IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | | |
|---|---|---|
| LAMISS INVESTMENTS, LLC, MITCH RICHARD, DONALD ALLEN, HARRIET ALLEN HENRY, STEVEN CAMPO, AND LONNIE SHANNON MELTON, | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) ) | Civ. Act. No: 5:24-cv-00111-DCB-BWR |
| JEFFREY KELLER, KYLE W. FELLING, TIMOTHY THOMPSON, BRIAN NEARN, BRICO, INC., AND PROBYSCI, LLC | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## REPLY IN SUPPORT OF MOTION TO COMPEL ALTERNATIVE DISPUTE RESOLUTION AND STAY JUDICIAL PROCEEDINGS [8]

Defendants Jeffrey Keller, Timothy Thompson, Brian Nearn, Brico, Inc. and Probysci, LLC ("Defendants") submit this reply brief in support of their Motion to Compel Alternative Dispute Resolution and to Stay Judicial Proceedings [8].[1]

"The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate." *Kisner v. Bud's Mobile Homes*, 512 F. Supp. 2d 549, 556–557 (S.D. Miss. 2007) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81, (2000)). Plaintiffs have failed to carry that burden. The Court should grant Defendants' Motion because a valid agreement to arbitrate exists, and it delegates the determination of arbitrability to the arbitrator. Even if the Court disagrees and

---

[1]   Capitalized terms in this reply brief have the same meaning as defined in Defendants' opening brief [9].

assesses arbitrability, it will find that this matter falls within the scope of the subject arbitration agreement.

## I.    A valid agreement to arbitrate exists in the Rapid LLC Agreement.

When presented with a motion to compel arbitration, the court first considers whether there is a valid agreement to arbitrate. Memo. [9] at 7 (citing *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018)). Plaintiffs appear to argue that no valid agreement to arbitrate exists here because there was no meeting of the minds to arbitrate any dispute. Resp. [15] at 10. [2]

As support, Plaintiffs solely rely on *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. App'x. 308, 311 (5th Cir. 2020) (per curiam).[3] There, the Fifth Circuit applied <u>Utah law</u> to assess whether a valid arbitration agreement existed. O'Shaughnessy signed a member agreement that incorporated by reference policies and procedures <u>that O'Shaughnessy never signed</u>. *O'Shaughnessy*, 810 Fed. App'x. at 309. The member agreement contained a merger clause, stating it superseded all prior agreements and <u>any other agreements not in a writing signed by both parties</u>, and a jurisdiction and choice of law clause. *Id.* The <u>unsigned</u> policies and procedures contained <u>an arbitration clause</u>. *Id.* at 310. Ultimately, the Fifth Circuit affirmed the

---

[2]    In their argument, Plaintiffs state their claims do not arise under the Rapid LLC Agreement. *See, e.g.*, Resp. [15] at 11, 13. That does not matter at this step; the Court is strictly looking for a valid agreement to arbitrate.

[3]    Plaintiffs incorrectly state that the "Federal Arbitration Act 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* at 10. The court observed instead that the FAA's "<u>liberal federal policy favoring arbitration</u> . . . does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *O'Shaughnessy*, 810 Fed. App'x at 311 (emphasis added). The FAA clearly still applies to this determination.

trial court's finding that there was no meeting of the minds with respect to arbitration. *Id.* at 312.

As a per curiam decision, *O'Shaughnessy* is not precedent. *See* 5th Cir. R. 47.5.4. Even so, *O'Shaughnessy* is distinguishable, because the Rapid LLC Agreement is signed by Plaintiffs, includes an arbitration clause, and does not incorporate the MIPA. *See Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (Miss. 2010) ("We first look to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol evidence."); *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 753 (Miss. 2003) ("We must look to the 'four corners' of the contract whenever possible to determine how to interpret it.").

Unlike in *O'Shaughnessy*, Plaintiffs here signed the agreement that contains the arbitration clause (the Rapid LLC Agreement). *See* Ex. B [8-2] to Motion [8]; Memo. [9] at 2 (noting that each Plaintiff is a member of Plaintiff LaMiss, and LaMiss, through its Manager, Plaintiff Harriet Allen Henry, signed the Rapid LLC Agreement). Plaintiffs cannot now ignore something they voluntarily signed. *See United Credit Corp. v. Hubbard*, 905 So. 2d 1176, 1178 (Miss. 2004) (noting Mississippi law charges a person with knowing the contents of any documents that he executes); *J.R. Watkins Co. v. Runnels*, 172 So. 2d 567, 571 (Miss. 1965) (holding that "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read.").

While the *O'Shaughnessy* member agreement incorporated by reference the policies and procedures, the Rapid LLC Agreement does not incorporate by reference

3

the MIPA. The signed member agreement in *O'Shaughnessy* superseded all agreements not in writing and signed by the parties (which would include the unsigned policies and procedures, which contained the arbitration clause). But the Rapid LLC Agreement, which contains the arbitration provision, provides that "[a]ll prior and contemporaneous negotiations and agreements between the parties on the matters contained in this Agreement are expressly merged into and superseded by" the Rapid LLC Agreement." Ex. B [8-2] to Motion [8] at 41, ¶ 20.15.

In sum, Plaintiffs' validity argument fails. The Court has before it a valid arbitration agreement, housed within the four corners of a writing signed by Plaintiffs (the Rapid LLC Agreement). The first step in the motion-to-compel analysis is satisfied.

## II.    The Rapid LLC Agreement expressly incorporates the AAA Rules, which constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

After finding a valid arbitration agreement, the court considers whether it or the arbitrator performs the second step, *i.e.*, determining whether the present dispute falls within the arbitration agreement's scope. Memo. [9] at 9 (collecting cases).

Plaintiffs try to avoid having the arbitrator decide arbitrability by citing inapplicable cases and relying on non-binding precedent. *See* Resp. [15] at 8-10. For example, in *Buckeye Check Cashing, Inc. v. Cardegna* the U.S. Supreme Court noted that its prior holding established that a federal court <u>may</u> adjudicate claims of fraud in the inducement of <u>an arbitration clause</u> but reaffirmed that challenges to the validity of a contract as a whole "must go to the arbitrator." 546 U.S. 440, 445, 449 (2006). Plaintiffs do not claim they were fraudulently induced into agreeing to the

arbitration clause in the Rapid LLC Agreement, *see* Am. Compl. [3] at 7-8 (fraud claim), so any argument that the arbitration clause should be vitiated on fraud grounds fails, *Downer v. Seigel*, 489 F.3d 623, 627-28 (5th Cir. 2007).

This Court's sister division, not the Fifth Circuit Court of Appeals, as Plaintiffs contend, decided *Anderson v. Virginia College, LLC*, No. 3:12CV503TSL–MTP, 2012 WL 4052198 (S.D. Miss. Sept. 13, 2012). That case is not binding and did not address how invoking the AAA Rules impacts delegation of the arbitrability determination. Even if the latter were not true, *Anderson* would be trumped by the precedent that Defendants have offered. Memo. [9] at 9-10 (citing Fifth Circuit law finding agreements incorporating AAA rules delegated determination of scope to arbitrator).

The final two cases Plaintiffs cite support Defendants' position—a fact Plaintiffs conveniently omit. Resp. [15] at 10 (citing *Dunavant v. Rivercrest Ltd. Partnership, LP*, No. 5:20-cv-42-DPJ-MTP, 2020 WL 8409099, at *2 (S.D. Miss. Sept. 28, 2020) (quoting *Petrofac, Inc. v. DynMcdermott Petroleum Operations Co.*, 687 F. 3d 671, 675 (5th Cir. 2012)).

The *Dunavant* court found "that the parties incorporated the AAA Rules and, in doing so, agreed that the arbitrator would determine arbitrability." 2020 WL 8409099, at *2. The court granted the motion to compel and held "the "arbitrator will decide whether the claim for dissolution is subject to arbitration." *Id.* at *3. In doing so, the *Dunavant* court relied on *Petrofac, Inc. v. DynMcdermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). *Id.* at *2.

In *Petrofac*, the Fifth Circuit noted that the parties there had expressly incorporated the AAA Rules into their arbitration agreement, which grant the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." 687 F.3d at 675.[4] The Fifth Circuit "agreed with most of [its] sister circuits that the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id*. The Fifth Circuit has continued to affirm this position. *See Mendoza v. Fred Haas Motors, Ltd.,* 825 Fed. App'x 200, 202 (5th Cir. 2020); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019).

Plaintiffs are correct that courts should not assume that parties have agreed to arbitrate unless the parties clearly and unmistakably provide otherwise. But "the parties here did, clearly and unmistakably, provide otherwise" by incorporating the AAA Rules into the Rapid LLC Agreement. *Mendoza,* 825 Fed. App'x at 202-03. Binding precedent sends the question of arbitrability to the arbitrator. Defendants' Motion must, therefore, be granted, without discussion of arbitrability. *See Archer & White Sales, Inc.,* 935 F.3d at 279 ("If there is a valid delegation, the court must grant the motion to compel.").

### III.   If the Court decides the issue of arbitrability, it should find that the arbitration clause captures this dispute.

---

[4]    *See also* AAA Commercial Rules, R-7(a), https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited Jan. 21, 2025).

Plaintiffs contend that, should the Court decide the issue of arbitrability, the MIPA, as opposed to the Rapid LLC Agreement, controls because the documents "are separate and distinct documents" that do not incorporate each other and have different provisions, and Plaintiffs' claims arise under the MIPA and fall outside of the Rapid LLC Agreement's supposedly narrow arbitration clause. Resp. [15] at 4-8.

The existence of multiple, differing documents is not dispositive. In fact, the Fifth Circuit has addressed how courts can determine arbitrability in such situations. *See Safer v. Nelson Fin. Group, Inc.,* 422 F. 3d 289 (5th Cir. 2005). In *Safer*, the plaintiffs argued their claims pertained only to financial advice under the terms of an advisory agreement. *Id.* at 295. The court, however, disagreed; it looked to the record and determined that the plaintiffs were, truly, complaining about the implementation of the defendants' investment advice. *Id.* Even though that complaint fit under the new account information forms, the court held that the arbitration clause in those forms could, nonetheless, reach complaints falling under the advisory agreement. *Id.* at 296.

In reaching that holding, the court noted it has "repeatedly found that when agreements are interdependent and exist to further a single goal, an arbitration clause in one of the agreements reaches all aspects of the parties' relationship, including disputes that might arise out of the other agreement." *Id.* (internal quotations omitted). Further, the court stressed "it is well-settled law that several writings executed by the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction."

*Id.* at 296. Relying on this precedent, the *Safer* court highlighted how the two documents were signed at the same time, by the same parties, as part of one transaction, for the same purpose (enabling the firm to act as a financial manager). *Id.* at 296-297. Consequently, the arbitration clause in the forms could reach claims arising out of the advisory agreement. *Id.*

The gravamen of Plaintiffs' claims is that over two months <u>after</u> the MIPA and Rapid LLC Agreement were signed, Rapid was ordered to cease and desist operating after a source "alleg[ed] that Rapid's standard operating procedures and testing practices were not in compliance" with applicable Mississippi law and, the following month, Rapid was ordered to shut down "based on findings that Rapid's protocols, SOPs and procedures for testing were out of compliance with" applicable Mississippi law. Am. Compl. [3] ¶ 3.5. Plaintiffs try to pigeonhole their claims in the earlier, unknown time when certain defendants supposedly made representations to them. *See id.* ¶ 3.2 (discussing alleged representations but not specifying date of the same). But those supposed representations were about Rapid's operations and compliance with applicable Mississippi laws and regulations. *Id.* And the Amended Complaint contends those representations were untrue <u>solely</u> by looking to Rapid's operations months <u>after</u> they signed the MIPA and Rapid LLC Agreement.

That issue falls squarely within the Rapid LLC Agreement. *See* Memo. [9] at 11-12 (discussing relevant provisions). Even if this were not true, the arbitration provision in the Rapid LLC Agreement can reach claims related to the MIPA, because the two documents were executed by the same parties, around the same time, to

further a goal. October 11, 2023, is the effective date of both the MIPA and the Rapid LLC Agreement, and both documents were signed on or about October 12, 2023. The MIPA concerns the purchase of membership interests in Rapid—whose operations the LLC Agreement controls. Although the LLC Agreement does not expressly incorporate the MIPA, the MIPA provides that it "and [Rapid's] limited liability company agreement constitutes the entire agreement . . . ." Ex. A [8-1] to Motion [8] at 21, ¶ 7.1 (emphasis added).

The two agreements were offered and executed together as part of an effort to add new Rapid members, address their rights, and outline how Rapid would operate. Separating the agreements would "drive[] an artificial wedge into the integrated transaction between them." *Safer*, 422 F.3d at 297; *see also SDB Trade International, L.P. v. E&E Group, LLC*, No. H-08-226, 2008 WL 11397907 (S.D. Tex. May 15, 2008) (holding that agreement with arbitration clause covered claims related to purchase order, even though the two did not refer to one another).

Finally, the Rapid LLC Agreement's arbitration language should be construed broadly, as opposed to the narrow construction Plaintiffs champion. Plaintiffs focus on the introductory clause of Section 20.12 of the Rapid LLC Agreement, which provides that "the parties agrees that any and all disputes arising under this Agreement . . . shall be addressed solely and exclusively in the" manner thereafter described. Resp. [15] at 7 (quoting language). Plaintiffs contend this "arising under" language is narrow and excludes their claims. *Id*. at 8.

9

But Section 20.12's subsections contain broader language: the parties must "endeavor to resolve <u>any dispute</u> through mediation" and, if unsuccessful, must arbitrate "<u>any</u> controversy or claim <u>arising out of or relating to</u> this Agreement, or the alleged breach of the Agreement (excluding the breach provisions in Sections 14.1, 14.2, and 14.3)." Ex. B [8-2] to Motion [8] at 40 (emphasis added). When read as a whole, Section 20.12 demonstrates an intent to cast a broad net over what is subject to its provisions. This reading comports with the strong federal policy in favor of arbitration, *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990), and the law that has developed to further the same, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"), *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (noting that, in determining whether the dispute falls within the scope of the arbitration agreement, ambiguities are resolved in favor of arbitration).[5]

---

[5]  Plaintiffs' argument that the Court should interpret ambiguities in the Rapid LLC Agreement against the drafting party, Resp. [15] at 8 n.17, ignores that agreement's Interpretations provisions, which states:

> The language in this Agreement shall be construed in all cases according to its fair meaning and not for or against any Person on the basis of authorship. Each party hereto acknowledges that it could elect to retain legal counsel to review and advise as to the provisions of this Agreement, that such party has entered into this Agreement of its own volition, without duress, and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

Ex. B [8-2] to Motion [8] § 20.16.

This broad net captures Plaintiffs' claims because, at a minimum, Plaintiffs cannot maintain their underlying action without discussing the Rapid LLC Agreement. *See Downer*, 489 F.3d at 626-27 (finding clause covered all controversies, including plaintiffs' fraud claims, because, inter alia, the plaintiffs could not maintain the underlying action without discussing the parties' agreement). As discussed, the Amended Complaint contends certain representations were untrue solely by looking to Rapid's operations months after Plaintiffs signed the MIPA and Rapid LLC Agreement. The Rapid LLC Agreement governed those operations and thus will be central to the claims and defenses in this matter. *See* Memo. [9] at 4-5, 11-12 (citing relevant provisions). Plaintiffs do not even attempt to argue the contrary.

## Conclusion

Defendants have demonstrated that a valid arbitration agreement exists, one that delegates arbitrability. Consequently, the Court should grant Defendants' Motion without analyzing arbitrability. Even if the Court were to perform that assessment, it would find that this matter falls within the subject arbitration agreement's scope. Plaintiffs have not established otherwise or carried their burden of demonstrating why arbitration is not appropriate. Defendants' Motion should be granted.

Respectfully submitted, January 24, 2025.

By: *Stevie F. Rushing*

Jeffrey R. Blackwood (MB No. 10613)
Slates C. Veazey (MB No. 104310)
Stevie F. Rushing (MB No. 105534)
Bradley Arant Boult Cummings llp
188 East Capitol Street, Suite 1000

Jackson, MS 39201
(601) 948-8000
jblackwood@bradley.com
sveazey@bradley.com
srushing@bradley.com

*Attorneys for Jeffrey Keller, Timothy Thompson, Brian Nearn, Brico, Inc., and Probysci, LLC*

BRADLEY ARANT BOULT CUMMINGS LLP
*Physical Address*:
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39201
*Mailing Address*:
P.O. Box 1789
Jackson, MS 39215

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Stevie F. Rushing*
STEVIE F. RUSHING
